Filing # 83083856 E-Filed 01/09/2019 01:29:04 PM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

ASBESTOS DIVISION

BLANCA MOURE-CABRERA,                    CASE NO.: 2019-000727-CA-01

      Plaintiff,

-vs-

CYPRUS AMAX MINERALS CO., individually and as successor in interest to
      CHARLES MATHIEU;
IMERYS TALC AMERICA, INC., individually and as successor in interest to
      and/or f/k/a LUZENAC AMERICA, INC., LUZENAC, INC. and
      CYPRUS AMAX MINERALS CO., individually and as successor in interest to
      CHARLES MATHIEU;
JOHNSON & JOHNSON;
JOHNSON & JOHNSON CONSUMER INC.;
PUBLIX SUPER MARKETS, INC.;

      Defendants.
                                                   /

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, BLANCA MOURE-CABRERA, by and through the undersigned

counsel, and files this Complaint and Demand for Jury Trial against the above-named Defendants

and alleges as follows:

1.     Plaintiff's action is an action for damages in excess of the sum of FIFTEEN

THOUSAND AND NO/100 ($15,000.00) DOLLARS, exclusive of interest and costs.

2.     BLANCA MOURE-CABRERA is the Plaintiff herein.

3.     Venue is proper in Miami-Dade County pursuant to Florida Statute § 47.051 and §

47.021, as Plaintiff's causes of action accrued in Miami-Dade County and at least one of the

Defendants against whom this action is brought has an agent and/or representative in this County,

and/or otherwise resides here.

1

4. "Asbestos" or "asbestos-containing/contaminated products" or "products" as used in this Complaint means asbestos as well as any and all materials, products, component products, and/or manufactured goods containing or including in whole or in any mixture (including as a contaminant, such as asbestiform talc and/or asbestos-contaminated talc) with other materials manufactured, marketed, sold, distributed, and/or used for any and all purposes, including but not limited to cosmetic talcum powder.

5. Plaintiff, BLANCA MOURE-CABRERA, was born on July 28, 1937, and is eighty-one (81) years of age.

6. Plaintiff, BLANCA MOURE-CABRERA, was diagnosed with terminal peritoneal mesothelioma on or about August 15, 2018, as a result of Plaintiff's exposure to asbestos and asbestiform fibers in Defendants' asbestos-contaminated talc and talcum powders.

7. Plaintiff, BLANCA MOURE-CABRERA, was exposed to Defendants' asbestos-contaminated Johnson & Johnson Baby Powder, which was purchased from Defendant PUBLIX SUPER MARKETS, INC., at her residences in Miami-Dade County, Florida, between or within the approximate years of 1964 and 2018.

8. Plaintiff, BLANCA MOURE-CABRERA, was exposed to asbestos-contaminated talc and talcum powders designed, manufactured, sold and/or distributed by each of the above-named Defendants, individually or through its predecessors or subsidiaries.

9. Plaintiff, BLANCA MOURE-CABRERA, was exposed to Defendants' products in the intended manner, without significant change in the products' condition.

10. Plaintiff's exposure to, contact with, inhalation, and/or ingestion of Defendants' asbestos-contaminated talc and talcum powders caused Plaintiff to contract peritoneal mesothelioma. Plaintiff's alleged causes of action arise out of, or are incidental to each

2

Defendant's interstate, intrastate, and international business ventures conducted in the United States, including Florida.

11.     Pursuant to Florida Statute § 415.1115 and Florida Rules of Judicial Administration 2.215(g) and 2.545(c)(1), Plaintiff's action is afforded priority status due to Plaintiff's age and terminal disease.

## DEFENDANTS

12.     Defendant, CYPRUS AMAX MINERALS CO., individually and as successor in interest to CHARLES MATHIEU, INC., is a Delaware corporation with its principal place of business located in Arizona. At all times material to this cause of action, Defendant designed, manufactured, sold, and/or distributed asbestos-containing products throughout the United States, including Florida, which Defendant knew or should have known contained asbestos, and which Plaintiff purchased, used and was exposed to in her life, causing Plaintiff's mesothelioma. Defendant's affiliations with the State of Florida are so continuous and systematic as to render it essentially at home in the State of Florida. Service of process on Defendant is predicated on Fla. Stat. § 48.081 and Fla. Stat. § 48.091.

13.     Defendant, IMERYS TALC AMERICA, INC., individually and as successor in interest to and/or f/k/a LUZENAC AMERICA, INC., LUZENAC, INC. and CYPRUS AMAX MINERALS CO., individually and as successor in interest to CHARLES MATHIEU, INC., is a Delaware corporation with its principal place of business located in Georgia. At all times material to this cause of action, Defendant designed, manufactured, sold, and/or distributed asbestos-containing products throughout the United States, including Florida, which Defendant knew or should have known contained asbestos, and which Plaintiff purchased, used and was exposed to in her life, causing Plaintiff's mesothelioma. Defendant's affiliations with the State of Florida are

3

so continuous and systematic as to render it essentially at home in the State of Florida. Service of process on Defendant is predicated on Fla. Stat. § 48.081 and Fla. Stat. § 48.091.

14.     Defendant, JOHNSON & JOHNSON, is a New Jersey corporation with its principal place of in New Jersey. At all times material to this cause of action, Defendant designed, manufactured, sold, and/or distributed asbestos-containing products throughout the United States, including Florida, which Defendant knew or should have known contained asbestos, and which Plaintiff purchased, used and was exposed to in her life, causing Plaintiff's mesothelioma. Defendant's affiliations with the State of Florida are so continuous and systematic as to render it essentially at home in the State of Florida. Service of process on Defendant is predicated on Fla. Stat. § 48.081 and Fla. Stat. § 48.091.

15.     Defendant, JOHNSON & JOHNSON CONSUMER INC., is a New Jersey corporation with its principal place of in New Jersey. At all times material to this cause of action, Defendant designed, manufactured, sold, and/or distributed asbestos-containing products throughout the United States, including Florida, which Defendant knew or should have known contained asbestos, and which Plaintiff purchased, used and was exposed to in her life, causing Plaintiff's mesothelioma. Defendant's affiliations with the State of Florida are so continuous and systematic as to render it essentially at home in the State of Florida. Service of process on Defendant is predicated on Fla. Stat. § 48.081 and Fla. Stat. § 48.091.

16.     Defendant, PUBLIX SUPER MARKETS, INC., is a Florida corporation with its principal place of business located in Florida. At all times material to this cause of action, Defendant designed, manufactured, sold, and/or distributed asbestos-containing products throughout the United States, including Florida, which Defendant knew or should have known contained asbestos, and which Plaintiff purchased, used and was exposed to in her life, causing

4

Plaintiff's mesothelioma. Defendant's affiliations with the State of Florida are so continuous and systematic as to render it essentially at home in the State of Florida. Service of process on Defendant is predicated on Fla. Stat. § 48.081 and Fla. Stat. § 48.091.

17. Each of the above-named Defendants have, at all times material to this cause of action, through their agents, officers and representatives, operated, conducted, engaged in and carried on a business venture in Florida; maintained an office or agency in this State; solicited business or provided service activities within this State; and/or committed a tortious act within this State by manufacturing, selling and disseminating to the public inherently dangerous asbestos-containing products: 1) Without testing said products to determine their harmful effects on persons coming in contact with said products; and 2) By failing to take any reasonable precautions or to exercise reasonable care to adequately or sufficiently warn Plaintiff and other persons similarly situated, of the risks, dangers and harm of contracting mesothelioma, asbestosis, lung cancer and other forms of cancers, through exposure to, contact with, use of, handling and/or manipulation of Defendants' asbestos-containing products and the consequent inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos and/or asbestos containing products.[1]

18. Plaintiff's causes of action arise from each Defendant operating, conducting, engaging in, or carrying on a business or business venture in the State of Florida or having an office or agency in this State; and/or committing a tortious act within this State. Furthermore, each Defendant has caused injury to Plaintiff within this State arising out of acts and/or omissions by each Defendant inside and outside this State. At the time of Plaintiff's injury, each Defendant was

---

[1] This paragraph contains allegations of fact (not allegations of law) supporting Plaintiff's claims. Thus, Plaintiff is not alleging that Defendants are subject to any legal requirement or legal duty not recognized under Florida law.

engaged in solicitation or service activities within this State; and products, materials, or things processed, serviced, or manufactured by Defendants were used within this State in the ordinary course of commerce, trade, or use. Additionally, each of the above-named Defendants have, at all times material to this cause of action, through their agents, officers and representatives, engaged in substantial and not isolated activity within the State of Florida.

19. Defendants' tortuous conduct, including but not limited to failure to warn and/or the manufacture, sale and/or distribution of defective products, is continuing and presently existing, caused injuries to Plaintiff herein, arose out of the acts and/or omissions which occurred inside and outside of the State of Florida during the relevant period of time Defendants' products were used and/or consumed in the ordinary course of commerce, trade and/or use, as set forth herein and said use or consumption caused Plaintiff to contract mesothelioma.

## COUNT I: NEGLIGENCE

Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 19 above, and further alleges the following:

20. Plaintiff was exposed to asbestos and/or asbestos-containing products manufactured, designed, sold, supplied and/or distributed by the above-referenced Defendants.

21. While using Defendants' asbestos-containing products, Plaintiff inhaled asbestos fibers contained within, on and emitted from Defendants' products, causing Plaintiff to eventually develop mesothelioma. Each exposure to Defendants' products, which were connected to and incidental to Defendants' manufacture, sale, supply and/or distribution of its products, was harmful and substantially contributed in causing Plaintiff's mesothelioma.

22. Due to her mesothelioma, Plaintiff has required medical treatment; is greatly inconvenienced in her ability to lead and enjoy a normal life; has lost substantial income; and is

6

permanently impaired. As a result of her condition, Plaintiff has suffered, and continues to suffer, pain, mental anguish, depression and other mental disorders; incurred, and continues to incur, medical expenses for the treatment of physical and mental injuries; and is physically handicapped. Said injuries are permanent and continuing in nature, and will result in Plaintiff's inevitable death.

23.     The aforementioned injuries, disabilities and eventual death of Plaintiff are the direct and proximate cause of the negligence of Defendants and/or their predecessors-in-interest or subsidiaries, in that Defendants manufactured, designed, sold, supplied and/or distributed and/or otherwise placed into the stream of intrastate and interstate commerce products which Defendants knew or, in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and wellbeing, and yet did nothing to advise Plaintiff of this information.

24.     Before manufacturing, designing, selling, supplying and/or distributing their products, to which Plaintiff was exposed, each Defendant knew, or in the exercise of reasonable care should have known, that Plaintiff and/or others similarly situated would purchase, use and be exposed to asbestos from their products by inhaling asbestos fibers emitted or released from same.

25.     At all times material to this cause of action, Defendants' products contained latent characteristics and/or design defects at the time of manufacture and Plaintiff's exposure, and each Defendant knew, or should have known, that Plaintiff's exposures to their products were harmful and could cause serious injuries including, but not limited to, mesothelioma, asbestosis, lung cancer, ovarian cancer and/or other forms of cancer.

26.     Each Defendant also knew, or should have known, that its products would be used by and around Plaintiff, or those similarly situated, without inspection for these defects and furthermore, that any such inspection would not have revealed the asbestos fibers or underlying danger contained in Defendants' products; or that exposure to same could cause severe injury.

7

These facts, known to or readily ascertainable by each Defendant, made Defendants' products inherently and unreasonably dangerous in that Plaintiff could not know nor contemplate the dangers of inhaling asbestos fibers from, in, or on Defendants' products that Plaintiff used or was exposed to during her lifetime and daily life.

27.     Each Defendant who was in the business of manufacturing, designing selling, supplying, and/or distributing products during the times pertinent to this suit was negligent and/or failed to exercise reasonable care in one, some and/or all of the following respects, the same being the proximate cause of Plaintiff's injuries and impending death[2]:

    a.  In failing to adequately warn Plaintiff of the dangerous characteristics of its products in that each Defendant failed to warn Plaintiff that she could develop fatal injuries including, but not limited to, mesothelioma, asbestosis, lung cancer and/or other forms of cancer, as a result of being exposed to asbestos emitted from each Defendant's products.

    b.  In failing to place adequate warnings on or in the containers of said asbestos and/or asbestos-containing materials to warn of the dangers to one's health of coming in contact with said asbestos fibers and/or asbestos-containing materials and of the gravity of the risk and extent of danger that Plaintiff was exposing herself by working with and being exposed to said products.

    c.  In failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing asbestos and/or asbestos-containing materials.

---

[2] The following subsections (a-g) contain allegations of fact (not allegations of law) supporting Plaintiff's claim for negligence. Thus, Plaintiff is not alleging that Defendants are subject to any legal requirement or legal duty not recognized under Florida law.

d. In failing to develop and utilize a substitute material to eliminate asbestos fibers in the products manufactured, designed, sold, supplied and/or distributed.

e. In failing to utilize the available substitute materials for asbestos fibers in the products mined, milled, manufactured, designed, sold, supplied and/or distributed.

f. In continuing to sell and otherwise distribute asbestos products when each Defendant knew at the time of sale and/or distribution of said products, that such products caused injuries including, but not limited to, mesothelioma, asbestosis, lung cancer and/or other forms of cancer, to those persons exposed to said products.

g. In failing to adequately test their respective asbestos fibers and/or asbestos-containing products before offering them for sale and use so that Plaintiff and other persons similarly situated, would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of said products and thereby expose herself to the development of fatal injuries including, but not limited to, mesothelioma, asbestosis, lung cancer and/or other forms of cancer as a result of such inhalation of the asbestos dust and fibers.

WHEREFORE, Plaintiff prays for judgment against Defendants on all of the aforementioned counts for compensatory damages against all Defendants herein, for Plaintiff's costs expended herein, for interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## COUNT II: STRICT LIABILITY

Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 19 above, and further alleges the following:

28. Each Defendant, their predecessors-in-interest and/or their alter egos are and/or have been a manufacturer, distributor, supplier, retailer, wholesaler and/or assembler of asbestos and/or asbestos-containing products.

29. The products complained of were manufactured, designed, sold, supplied and/or distributed by each of the Defendants and used by and/or in the vicinity of the Plaintiff during her lifetime.

30. Defendants manufactured, designed, sold, supplied and/or distributed and/or otherwise placed into the stream of commerce and/or caused to be placed into the stream of commerce their asbestos and/or asbestos-containing products.

31. Plaintiff used, was around and was exposed to each Defendant's asbestos fibers or asbestos-containing products during her lifetime, during which time asbestos from or on Defendants' products were liberated into the air and inhaled by Plaintiff eventually causing her mesothelioma.

32. At the time the Defendants manufactured, designed, sold, supplied and/or distributed the aforesaid products, such products were expected to, and did, reach Plaintiff in a condition without substantial change from that in which such products were when within the possession of Defendants.

33. Defendants' products were dangerous beyond the expectation of the ordinary user when used as intended or in a manner reasonably foreseeable by Defendants.

34. When used, Defendants' products failed to perform as safely as Plaintiff expected in that the products released respirable asbestos fibers causing Plaintiff's mesothelioma.

35. Defendants' products were in a condition unreasonably dangerous to users, such as Plaintiff, and said products were expected to, and did, reach Plaintiff without substantial change affecting that condition.

10

36. Defendants' products to which Plaintiff was exposed were used in the manner in which they were intended.

37. Defendants' products were, by reason of their design, in a condition unreasonably dangerous to users, such as Plaintiff, and said products were expected to, and did, reach Plaintiff without substantial change affecting that condition.

38. Defendants' products, which called for the use of asbestos, were unreasonably dangerous because of their design in that the risk of danger to users, such as Plaintiff, outweighed the benefits.

39. Defendants' products were in a defective condition and unreasonably dangerous, in that those products[3]:

    a. Did not provide an adequate warning of the potential harm that might result from exposure to asbestos and/or asbestos-containing dust and, alternatively, did not have adequate instructions for safe use of the products;

    b. Did not contain proper respirators to protect users, such as Plaintiff, from the potential harm that might result from exposure to asbestos and/or asbestos-containing/contaminated dust;

---

[3] The following subsections (a-e) contain allegations of fact (not allegations of law) supporting Plaintiff's claim for strict liability. Thus, Plaintiff is not alleging that Defendants are subject to any legal requirement or legal duty not recognized under Florida law.

11

c. Did not have warnings to persons, such as Plaintiff, who had been, or reasonably may have been, exposed to Defendants' asbestos and/or asbestos-containing products, of their disease potential, the proper steps to take to reduce the harmful effects of previous exposure, the need to have periodic chest x-rays and medical examinations including the giving of histories which revealed the details of the previous exposure, and the need to have immediate and vigorous medical treatment for all respiratory problems;

d. By design contained asbestos, a substance deleterious, poisonous, and highly harmful to Plaintiff; or

e. Contained asbestos when and after it became feasible to design, manufacture and market reasonably comparable products not containing asbestos fibers.

40. Plaintiff, unaware of the defective and unreasonably dangerous condition of Defendants' products at a time when such products were being used for the purposes for which they were intended, was exposed to asbestos contained in Defendants' asbestos-contaminated products.

41. Each Defendant knew that their products would be used without inspection for defects, and by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include the safe handling, installation and replacement of said asbestos products.

42. Plaintiff, unaware of the hazards and defects in Defendants' products, was exposed to asbestos, causing Plaintiff to develop mesothelioma and making said asbestos-containing products unsafe for the purpose of handling, installation and removal of same.

43. As a direct and proximate result of the product defects as described herein, Plaintiff was caused to contract diseases and injuries to her body, including mesothelioma. Due to her

12

mesothelioma, Plaintiff has required and will require medical treatment; has been greatly inconvenienced in her ability to lead and enjoy a normal life; has lost and will continue to lose substantial income; has been permanently impaired; and will eventually and unfortunately die from mesothelioma. As a result of her condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered physical handicap and impairment. Said injuries are permanent and continuing in nature, causing Plaintiff to horribly suffer until her eventual death.

44.     Defendants' products were unreasonably dangerous because a less dangerous alternative, substitute and/or modification were economically feasible and readily available. Plaintiff alleges that there were substitute materials for asbestos known to each Defendant and unknown to Plaintiff, which could have been used by each Defendant in designing and manufacturing their products which Plaintiff handled, used, and was exposed. Being in the business of manufacturing, designing, selling, supplying, and/or distributing asbestos-containing products during the times pertinent to this suit, and being considered an expert in its field, each Defendant knew or should have known that Plaintiff or others similarly situated would come in contact with their asbestos-containing products, and would be exposed to asbestos by inhaling the asbestos contained in each of their products, eventually causing fatal injuries including, but not limited to, mesothelioma, asbestosis, lung cancer and/or other forms of cancer.

WHEREFORE, Plaintiff prays for judgment against Defendants on all of the aforementioned counts for compensatory damages against all Defendants herein, for Plaintiff's costs expended herein, for interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

13

## DAMAGES[4]

Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 44 above, and further alleges the following:

45. As a direct and proximate result of the negligence, carelessness, gross negligence, strict liability, and/or willful omissions of Defendants as described herein, Plaintiff contracted mesothelioma, causing Plaintiff's pain, suffering and mental anguish.

46. As a direct and proximate result of the aforesaid, Plaintiff was obligated to spend various sums of money to treat Plaintiff's mesothelioma, and Plaintiff continues to be obligated for the expenses of same.

47. As a direct and proximate result of the aforesaid, Plaintiff has and will stand a loss of earnings and earning capacity; and as a direct and proximate result of the aforesaid, Plaintiff's enjoyment of life has been impaired and Plaintiff's life expectancy has been shortened, all to Plaintiff's great loss.

48. As a direct and proximate result of the aforesaid, and since Plaintiff first learned of her aforementioned injuries, Plaintiff has suffered, and will continue to suffer, severe anxiety and ongoing psychological damage, which may require future psychological and/or medical treatment.

49. As a direct and proximate result of the aforesaid, Plaintiff has and will continue to suffer a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

WHEREFORE, Plaintiff prays for judgment against Defendants on all of the aforementioned counts for compensatory damages against all Defendants herein, for Plaintiff's

---

[4] This section contains allegations of fact (not allegations of law) supporting Plaintiff's claim for damages. Thus, Plaintiff is not alleging that Defendants are subject to any legal requirement or legal duty not recognized under Florida law.

costs expended herein, for interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable as a matter of right.

**DATE: January 9, 2019**

Respectfully submitted,

THE FERRARO LAW FIRM, P.A.
*Attorneys for Plaintiff*
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Telephone (305) 375-0111
Facsimile (305) 379-6222

By: _____
MARC P. KUNEN, ESQ.
Florida Bar No.: 91781

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

ASBESTOS DIVISION

BLANCA MOURE-CABRERA,                    CASE NO.:

     Plaintiff,

-vs-

CYPRUS AMAX MINERALS CO., et al.,

     Defendants.

                                                         /

## PLAINTIFF'S SWORN INFORMATION FORM

COMES NOW, Plaintiff, by and through the undersigned counsel, pursuant to Florida

Statute § 774.205, and files the following Sworn Information Form:

1. Pursuant to Florida Statute § 774.205(3)(a):

| | |
|---|---|
| *Claimant's Name:* | **Blanca Moure-Cabrera** |
| *Address*: | **29290 SW 187ᵗʰ Court, Homestead, FL 33030** |
| *Date of Birth*: | **07/28/1937** |
| *Marital Status*: | **Single** |

2. Pursuant to Florida Statute § **774.205(3)(b)**: Plaintiff, Blanca Moure-Cabrera, will testify

regarding her exposures.

3. Although Plaintiff anticipates the exposures alleged herein will likely change based on

discovery, in an effort to comply with the requirements of Florida Statute § **774.205(3)(c)**, Plaintiff

states that Plaintiff, Blanca Moure-Cabrera, was exposed at her residences in Miami-Dade County,

Florida.

4. Although Plaintiff anticipates the exposures alleged herein will likely change based on

discovery, in an effort to comply with the requirements of Florida Statute § **774.205(3)(d)**, Plaintiff

states that Plaintiff, Blanca Moure-Cabrera, was exposed to Johnson & Johnson Baby Powder,

which was purchased from Publix Supermarkets, at her residences in Miami-Dade County, Florida, between or within the approximate years of 1964 and 2018.

5. Pursuant to Florida Statute § **774.205(3)(e):** Although Plaintiff's exposures are unrelated to her employment, Plaintiff was employed primarily by Miami-Dade Public Schools during the relevant time periods.

6. Pursuant to Florida Statute § **774.205(6):** *Mesothelioma.*

7. Pursuant to Florida Statute § **774.205(3)(g):** See attached <u>Exhibit A</u>.

8. Pursuant to Florida Statute § **774.207(2)**, Plaintiff has received no ***Collateral Source Payments and/or Settlements*** related to these asbestos-related claims, nor is Plaintiff aware of payments Plaintiff will receive in the future as a result of settlements or judgments from these claims.

I swear under penalty of perjury that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT

X _Blanca Moure-Cabrera_
Blanca Moure-Cabrera

    I HEREBY CERTIFY that on this day Blanca Moure-Cabrera personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments in the State and County aforesaid, and Blanca Moure-Cabrera, [ ] being personally known to me or [ ] who produced _____ as identification, executed the foregoing Sworn Information Form, and acknowledged before me that he executed same for the purpose therein expressed.

SWORN TO and SUBSCRIBED before me this _____ day of _____, 2018.

_____
NOTARY PUBLIC
My commission expires: _____

Personally Know ( ) OR Produced Identification ( )
Type of Identification Produced: _____

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon

Defendants via formal service of process with the Complaint at the inception of this lawsuit.

THE FERRARO LAW FIRM, P.A.
*Attorney for Plaintiff*
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Telephone (305) 375-0111
Facsimile (305) 379-6222

By: _____

MARC P. KUNEN
Florida Bar No. 91781

# EXHIBIT A

Surgical Pathology Report
Temporary Copy
Case: 002-SP-18-0007523
Blanca
Collected: 08/15/2018 13:41 EDT
Ordered by: Diaz, John Paul MD

Patient: Moure Cabrera,

ID: 835996
Location: SM_South Miami
Page: 1 of 1

## DIAGNOSIS:

**A&B. Anterior peritoneal and abdominal wall peritoneal implants:**
   **Malignant mesothelioma (see note).**
**Note: The tumor is strongly immunoreactive for calretinin, D2-40 and cytokeratin 7. It is negative for cytokeratin 20, BerEP4, PAX8, p53, TTF-1 and CDX2. The Ki67 index is approximately 10%. This pattern of staining supports the above diagnosis.**
**Dr. Otrakji concurs.**

ASR DISCLAIMER: Immunohistochemical stains were performed at Vitro Molecular Labs and interpreted by the South Miami Hospital Pathology Department. Some of these tests use analyte specific reagents (ASRs). The performance characteristics of ASRs were determined by Vitro Molecular Labs and have not been cleared or approved by the U.S. Food and Drug Administration (FDA). The FDA has determined that such clearance or approval is not necessary. These tests are used for clinical purposes.
**RG/ia**

Ronald Arthur Goerss, MD
(Electronically signed by)
Verified: 08/17/2018

## CLINICAL INFORMATION:

Procedure: Robotic exploration
Pre-Operative Diagnosis: Pelvic mass

## SPECIMEN SOURCE:

A. Anterior peritoneal implant
B. Anterior abdominal wall peritoneum

## INTRAOPERATIVE CONSULTATION:

Malignant epithelioid tumor. Mesothelial versus carcinoma. RG/ia

## GROSS DESCRIPTION:

A. A 1.5 x 1 x 0.4 cm strip of pale brown tissue. All sent for frozen section.
B. Two pieces of pale brown tissue, in aggregate 1.5 x 1.2 x 0.4 cm. All sent. 1 cassette.
RG/ia/pj